IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 6, 2006

# IN RE ADOPTION OF K.M.K., D.O.B. 11/16/97, AND K.L.K., D.O.B. 4/30/01

## JEFFREY LEE ENEIX, KERI ANN ENEIX, AND CHANTILLE MARIE KARES
### v.
## STEPHEN JOHN KARES AND SEAN LAURA

An Appeal from the Chancery Court for Henry County
No. 19949      Ron E. Harmon, Chancellor

---

### No. W2005-02073-COA-R3-PT - Filed May 24, 2006

---

This is an adoption and termination of parental rights case. The maternal grandparents of the two children at issue filed this petition requesting that the rights of the children's father be terminated and that the grandparents be permitted to adopt the children. The mother of the children joined in the petition. The petitioners alleged that the father's rights should be terminated based on his abandonment for failing to visit or support the children for a period of four months preceding his incarceration. After a hearing, the trial court found three grounds on which to terminate the father's parental rights: abandonment, persistent conditions, and the length of the father's prison term. The trial court also found that the children's best interest would be served by terminating the father's parental rights. The father now appeals, claiming that the trial court erred in terminating his rights based on abandonment. We affirm the trial court's decision, because the father did not challenge the other two grounds on which his rights were terminated, and the termination of the his rights based on those grounds must stand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Beth F. Belew, Paris, Tennessee, for the appellant, Stephen John Kares.

Teresa McCaig Marshall, Paris, Tennessee, for the appellees, Jeffrey Lee Eneix and Keri Ann Eneix.

# MEMORANDUM OPINION[1]

Chantille Mari Kares ("Mother") is the biological mother of the two children at issue, K.M.K. (d.o.b. November 16, 1997) and K.L.K. (d.o.b. April 30, 2001). Sean Laura is the biological father of K.M.K., and Respondent/Appellant Stephen John Kares ("Father"), Mother's former husband, is the biological father of K.L.K. In addition, Mother and Father have a third child who is not at issue in these proceedings.[2] Although it is undisputed that Sean Laura is K.M.K.'s biological father, Father was listed as K.M.K.'s father on her birth certificate. Therefore, in an abundance of caution, the trial court terminated Father's rights as to both children. For purposes of this Opinion, we will presume that Father was the legal father of both children, as the analysis applies equally to both.

On October 13, 2003, Petitioner/Appellees Jeffrey Lee Eneix and Keri Ann Eneix (collectively, "Petitioners"), Mother's parents, obtained legal guardianship of both of the minor children at issue through the Michigan Probate Court. On September 9, 2004, the Michigan Court issued a no contact order, enjoining Father from having "contact of any kind" with the children. Thereafter, on September 23, 2004, Petitioners were granted the exclusive care, custody and control of the children by the Juvenile Court in Henry County, Tennessee, based on the previous order entered by the Michigan Court. Since that time, the guardianship has been dissolved.

On March 11, 2005, Petitioners filed a petition to adopt the children in the trial court below. Mother joined in the petition, voluntarily relinquishing her parental rights and giving her consent to Petitioners' adoption of the minor children. *See* T.C.A. § 36-1-117(f) (2005). The petition sought to terminate the parental rights of both Sean Laura and Father on the grounds of abandonment, alleging that each had abandoned his child by willfully failing to support or visit for a period of time in excess of four consecutive months immediately preceding the filing of the petition. T.C.A. §§ 36-1-113(g)(1), 36-1-102(1)(A) (2005). Petitioners asserted that terminating both fathers' parental rights was in the best interest of the children. As to Father, the petition further stated that, at the time of the filing of the petition, he was serving a sentence of 72 to 120 months for assault/great bodily harm, stalking, and felonious assault in the Ojibway Correctional Facility in Michigan.

An order terminating Sean Laura's parental rights to K.M.K. was entered on June 6, 2005, and his parental rights are not at issue in this appeal. Father, however, filed a response, contesting the adoption and the termination of his parental rights. On April 6, 2005, the trial court appointed Father's counsel of record to represent him in this matter.

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]The third child is younger than K.L.K. and K.M.K. and resides with Mother.

The trial was conducted on July 18, 2005. Father participated in the hearing via telephone conference from the Southern Michigan Correctional facility in Jackson, Michigan, where he was incarcerated. He testified that he was in prison for assault and assault with a deadly weapon against Mother, which occurred on July 13, 2003. Father verified that his incarceration began on July 13, 2003, and that he remained incarcerated because he could not make the $500,000 bond. He conceded that he had numerous other charges pending against him at the time of the assault, but he could not recall all of the charges.

Father testified that he and Mother last lived together in April 2003. After that, Mother filed for divorce, and the parties' relationship was "on and off" for a period of time. Prior to that, in January 2003, the State of Michigan had petitioned to remove the children from the parties because Mother did not abide by a parenting agreement to keep the children away from Father. The petition filed in Michigan to remove the children from the parents was submitted as an exhibit at trial. It alleged that Father threatened Mother at gunpoint, raped and sodomized her, abused cocaine, and may have sexually abused one of his daughters. The petition also stated that the Kares home was found to have only minimal amounts of food available, and the children's clothes were found on the floor saturated in feline urine. The child protection agency in Michigan had required Mother to keep Father away from the children, and also required that she seek a legal separation or divorce from him.

When the children were placed in foster care in January 2003, Father was given two hours of supervised visitation per week at a state facility. In his testimony in the trial court below, Father claimed that he had exercised all of the visitation allowed by the State until his incarceration in July 2003. He said that the last time he spoke to the children was in February 2004. Since then, he said, he had tried to call the children "a couple of times," but Petitioners would not accept his phone calls. Father testified that he had tried to send letters to the children, but he did not know whether they received them, noting that some were returned to him. Father claimed that the only way he could be sure to get things to the children was to have his mother mail the items to them. He said that his mother was faithful about contacting the children, and that she called every week and mailed them gifts on special occasions. This, he claimed, was the only means by which he had been able to maintain contact with the children.

From January 2003 until his incarceration in July 2003, Father paid no child support, because no support order was entered. Father occasionally gave Petitioners money to buy the children lunch and other such things. During that time, Father worked as a subcontractor for J & A Construction for nine or ten dollars per hour.

Father acknowledged that, prior to his incarceration in July 2003, the last time he had been incarcerated was either in 1996 or 1997. At that time he was imprisoned for aggravated stalking and assault with a dangerous weapon. The sentence for one offense was around eighteen months to four years, and the other was two to four years; these sentences were served. Father said that the sentence he was serving at the time of the hearing was only for the assault with a dangerous weapon, which is a six to ten year sentence. Father is not eligible for parole until November 2008.

Father testified that his divorce from Mother in Michigan was final, except for the issue of custody. He said that custody of the children was initially awarded to Mother, but he filed a petition for more parenting time. At that point, Father said, the Michigan court was made aware that Petitioners, rather than Mother, had custody of K.M.K. and K.L.K. In light of that, Father indicated, the proceedings regarding custody in the Michigan court had not yet been resolved. Father worried that his younger child with Mother, who still lived with her, would not have a sibling relationship with K.M.K. and K.L.K. if the Petitioners were permitted to adopt K.L.K. and K.M.K.

Petitioner Keri Eneix ("Keri"), Mother's stepmother, testified at the hearing. Keri said that she, along with her husband, had had custody of K.L.K. and K.M.K. since October 2003. She said that the children were removed from the care of Mother and Father in January 2003 because of the parents' poor living conditions, domestic violence, and drugs. She said that she had personal knowledge of the filthy condition of their home and the severe abuse that took place there. She and her husband did not take immediate custody of the children in January 2003, because the children would not have been safe from Father while in their custody. Petitioners took custody of K.M.K. and K.L.K when they relocated to Tennessee. She said that Mother completed the parenting lessons ordered under the Michigan parenting plan, but that Father never completed the classes. To her knowledge, the children had no contact with Father between January and May 2003. Keri said that she had been threatened with physical harm by Father and by an inmate with whom Father had served time in Michigan. At some point, Keri had phone calls from Father blocked so that he could not harass the family. She acknowledged that Father had sent the children letters, but said that she marked them "return to sender" and sent them back to the prison. Keri maintained that blocking the telephone calls from Father and returning his letters were actions that were required under the September 2004 no-contact order issued by the Michigan court.

At the conclusion of the trial, the trial court terminated Father's parental rights to K.L.K. based on three statutory grounds:

> 3. The Court finds by clear and convincing evidence that [Father] has abandoned the minor children . . . pursuant to T.C.A. § 36-1-102(1)(A) in that he has willfully failed to visit the minor children and willfully failed to pay proper child support for the children for a period of time in excess of four (4) consecutive months immediately preceding any periods of his incarceration in any correctional facility and preceding the filing of the Complaint. The Court specifically finds that any support [Father] may have provided the children was insignificant.
>
> 4. The Court further finds that the children have been removed from the home of [Father] by Order of a Court for a period of six (6) months, [Father's] incarceration prevents their safe return to him and, these conditions will not be remedied at an early date so the children may be safely returned to [Father]. Further, continuation of the parent and child relationship diminishes the child's chances of early integration into a safe, stable and permanent home.
>
> 5. The Court further finds that [Father] has been confined in a correction or detention facility by Order of a Court as a result of a criminal act under a sentence of

ten (10) or more years and the children were under eight years of age at the time the sentence was ordered by the Court.

      6. Termination of [Father's] parental rights to these children pursuant to T.C.A. § 36-1-113 is in the best interest of the children.

      7. The Court finds that there is clear and convincing evidence to terminate [Father's] parental rights to the minor children and that said termination is in the best interest of the minor children considering [Father's] criminal history, his current incarceration, the fact that he will be incarcerated for several more years and that there is an Order from Michigan, County of Genesee Probate Court, dated after [Father's] incarceration, which states that it is not in the best interest of the children for [Father] to have contact of any kind with the children.

Thus, the trial court determined that Father's rights should be terminated pursuant to Sections 36-1-113(g)(1) (abandonment), 36-1-113(g)(3)(A) (persistent conditions), and 36-1-113(g)(6) (extended period of incarceration), and concluded that terminating Father's parental rights was in the best interest of the children. From this order, Father now appeals.

On appeal, Father argues that the trial court erred in concluding that he had abandoned the children by willfully failing to visit or support them during the four months prior to his incarceration. He claims that the evidence shows that he participated in every visit to which he was allowed prior to his incarceration, and that even after being incarcerated, he pursued a relationship with them through writing letters and making telephone calls. Furthermore, he claims that, during this time, he filed several pleadings in the Michigan court in an attempt to exercise visitation with the children. He admits that he did not support them during the pertinent time period, but claims that he did not do so because no support was ordered. Thus, he argues, the evidence was not clear and convincing that he intended to abandoned his children. Father makes no argument regarding the propriety of either the trial court's conclusions regarding the other two grounds on which his rights were terminated, or the trial court's best interest analysis.

Parental termination proceedings in Tennessee are governed by statute. A party seeking to terminate parental rights must prove two things. First, he must prove the existence of at least one of the statutory grounds for termination. T.C.A. § 36-1-113(c)(1) (2005); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Second, he must prove that terminating the parent's parental rights is in the child's best interest. T.C.A. § 36-1-113(c)(2) (2005); *In re A.W.*, 114 S.W.3d 541, 544-45 (Tenn. Ct. App. 2003); *In re C.W.W.*, 37 S.W.3d 467, 475-76 (Tenn. Ct. App. 2000). Both elements must be proven by clear and convincing evidence. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying this standard eliminates any substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re C.D.B.*, 37 S.W.3d 925, 927 (Tenn. Ct. App. 2000).

We review the trial court's findings of fact *de novo* on the record, presuming those findings to be correct unless the evidence preponderates otherwise. After that, because of the heightened

standard of review set forth in Section 36-1-113(c), we then determine whether those facts as found by the trial court clearly and convincingly establish the requirements for termination. *In re Valentine*, 79 S.W.3d at 548-49; *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *2 (Tenn. Ct. App. Nov. 25, 2003).

Under the statutory scheme, a parent's rights may be terminated based on any single ground established under Section 36-1-113(g). *In re D.L.B.*, 118 S.W.3d at 368. Father has made a cogent argument that the trial court erred in finding that the ground of abandonment had been established by clear and convincing evidence. He has not, however, challenged the trial court's conclusions regarding the other two grounds on which his parental rights were terminated, namely, persistent conditions and the removal of children under age eight (8) while he serves a ten-year prison term. "When a party fails to brief an issue, the issue is waived." *Blair v. Badenhope*, 940 S.W.2d 575, 576-77 (Tenn. 1996); *see also* T.R.A.P. 27. Because Father challenged neither the remaining two grounds on which the termination of his parental rights was based, nor the trial court's conclusion that termination of his parental rights was in the children's best interest, those matters are waived and the termination of Father's parental rights must stand. Consequently, we must affirm.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Stephen John Kares, and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE